IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 13-09066 |
| A1A PROFESSIONAL CLEANING & SUPPLIES, LLC d/b/a CHICAGO CONTRACT CLEANING OF ILLINOIS | Chapter 11 <br> Hon. Jacqueline P. Cox |
| Debtor. | |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, AND 364, AND (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §363; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

THIS MATTER, having come before the Court for status on the Debtor's Authorization to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, AND 364, and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. §363; (II) For an Order Granting Adequate Protection to Prepetition Secured Creditors Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364, in the above-referenced Chapter 11 case pursuant to Sections 105(a), 361, 362, 363 and 364 of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-2; and the entry of a Final Order as to the relief granted on an interim basis pursuant to order of court granting said relief dated March 26, 2013; that among other things:

    a.    Allow the Debtor to obtain post-petition financing from Canfield Funding LLC d/b/a Millenium Funding (the "DIP Factor") pursuant to the DIP Factoring Documents.

    b.    Grant to the DIP Factor liens on all the DIP Collateral which shall be senior to all postpetition liens.

  c. Grant to the DIP Factor, super-priority administrative claims having recourse to all post petition property of the Debtor's estate, now owned or hereafter acquired.

  d. Grant pre-petition first lien holders Amerisource and Illinois Department of Revenue various forms of adequate protection liens junior to the DIP Factor Financing; and

  e. Use the DIP Factor's cash collateral pursuant to section 363(c) of the Bankruptcy Code;

and it appearing that this Order is essential to the continued orderly operation of the Debtor's business and is in the best interest of the Debtor and the Debtor's estate, the following findings of fact are made by the Court:

## I. FINDINGS OF FACT

1. On March 7, 2013 (the "Petition Date") the Debtor filed its voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code.

2. The Debtor and Canfield Funding LLC d/b/a Millennium Funding (the "DIP Factor") have negotiated the terms of that certain Factoring and Security Agreement, a copy of which was attached to the prior Interim Order and incorporated herein by reference (the "Agreement").

3. The Agreement provides for advances by DIP Factor to the Debtor, so long as such advances do not cause the ratio of the Debtor's obligations to DIP Factor to the value (as determined in the Agreement) of the Debtor's eligible (as determined in the Agreement) accounts to exceed that set forth in the Agreement (the "Formula").

4. The Debtor has assigned its accounts to DIP Factor under the Agreement and DIP Factor has agreed to consider factoring accounts from the Debtor pursuant thereto.

5. The Debtor, notwithstanding its efforts to do so, was unable to obtain unsecured credit allowable under 11 U.S.C. Section 503(b)(1) as an administrative expense, or other than pursuant to 11 U.S.C. Section 364(c)(2) and (3), and the Debtor is unable to obtain credit on terms equal to or more favorable than those proposed by DIP Factor.

6. DIP Factor has been providing working capital to the Debtor in accordance with the Agreement in good faith, within the meaning of 11 U.S.C. Section 364(e), and all interested parties were either notified of the Motion, as evidenced by the affidavit of service, or were present at this Court's hearing on the Motion.

7. Good cause exists for approval of the Debtor's agreement to the factoring by DIP Factor under the terms of the Agreement, and this Order will minimize disruption of the Debtor as a "going concern" and is in the best interest of the Debtor, its creditors, and its estate. The terms upon which the Debtor is authorized to utilize cash advances are determined as fair under the circumstances.

8. The Debtor provided written notice of the filing of the original Emergency Motion to DIP Factor, the United States Trustee, any Official Creditors' Committee appointed in this Case and its counsel, the twenty largest unsecured creditors of the Debtor, all of the Debtor's secured creditors, the Internal Revenue Service, and all parties who filed requests for notice as evidenced by the affidavit of service filed by the Debtor's counsel with this Court, which notice this Court finds to be appropriate and adequate under Federal Rules of Bankruptcy Procedure 2002 and 4001, and as required by Section 364 of the Bankruptcy Code.

9. The Agreement with DIP Factor provides a vital source of working capital for the Debtor, is in the best interests of the Debtor and its estate, and is necessary to avoid immediate and irreparable harm.

10. The Debtor has contacted the Prepetition Lien Holders Amerisource and Illinois Department of Revenue ("IDOR") in good faith and continues to communicate with them regarding the status of this case and the Debtor's financing.

11. The Agreement between the DIP Factor and the Debtor provides that the DIP Factor shall have a priority claim and shall be senior to all lien-holders regarding post-petition collateral, including all accounts, except as stated herein, as that term is defined by the Uniform Commercial Code, created post-petition, subject to the fees of the United States Trustee, pursuant to 28 U.S. C. Sec. 1930. To the extent that Amerisource has a valid secured interest in prepetition collateral, such interest remains unaltered by this Order.

12. IDOR agreed to subordinate its interests to Millenium provided that the Debtor creates a dedicated bank account for the deposit of post-petition payroll tax payments and deposits the required funds in said account.

## II. ORDER

Based on the foregoing Findings, it is now therefore ORDERED as follows:

### POST-PETITION FINANCING

1. All capitalized terms used in this Order, not otherwise defined herein and unless otherwise indicated, shall have the meaning given them in the Agreement.

2. The Debtor is authorized to assign its accounts to the DIP Factor pursuant to Bankruptcy Code Section 363, pursuant to the terms of the Agreement, and to execute all documents and take all actions to be executed and taken in connection with and in furtherance of all undertakings and obligations thereunder.

3. Upon entry of this Order the Debtor shall have authorization to (i) assume the Agreement, and (ii) incur secured indebtedness to DIP Factor pursuant to this Order and the

Agreement in such amounts as needed in the ordinary course of its business and not for any purpose prohibited by law. Debtor's use of the proceeds of such indebtedness shall not affect the rights of DIP Factor hereunder. Any transaction between the Debtor and DIP Factor which DIP Factor reasonably understands to be intended to be under the Agreement shall represent such assumption of the Agreement by Debtor.

4. Pursuant to Section 364(c)(2) and 364(d)(1) of the Bankruptcy Code, the Debtor may grant to DIP Factor a security interest in the collateral as set forth in the Agreement effective as of the date of the filing of the Bankruptcy Case ("Collateral") as collateral for all present and future obligations of the Debtor to DIP Factor, including DIP Factor's reasonable attorneys' fees and expenses incurred in connection with the negotiation documentation, closing and enforcement of the Agreement and the protection of DIP Factor's rights in this Bankruptcy Case (the "Obligations"). The prepetition interest of Amerisource as previously referenced are unaltered herein. The DIP Factor's security interest shall be senior to the claim of any entity now or hereafter claiming an interest in the Collateral, subject to any fees of the United States Trustee pursuant to 28 U.S.C. Sec. 1930. The DIP Factor may but need not file an Initial Financing Statement under the Uniform Commercial Code to perfect its security interest in the Collateral.

5. The Debtor shall pay to the DIP Factor on demand without application to the Court (but subject to review by the Official Committee of Unsecured Creditors or the U.S. Trustee and seven days' notice thereto) DIP Factor's reasonable attorneys' fees and other professional fees arising from or related to the transactions contemplated herein, including without limitation the negotiating, closing, documenting, and obtaining Court approval thereof, the enforcement of DIP Factor's rights against Debtor.

6. The Obligations shall constitute a super-priority administrative expense claim under Section 364(c) (1) of the Bankruptcy Code, which shall be deemed allowed, without any further filing by DIP Factor, and which shall have priority over any and all other administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, except as to any fees of the United States Trustee pursuant to 28 U.S. C. Sec. 1930.

7. To the extent that the Debtor may become indebted to any governmental taxing entity, (defined herein as the Internal Revenue Service, the Illinois Department of Revenue, and the Illinois Department of Employment Security), whether for payroll or other taxes or otherwise, and said governmental entity is also an account debtor of the Debtor, the governmental entity's right of setoff, defense, counterclaim or recoupment, if any, shall be subordinate to the rights of DIP Factor with respect to accounts owing to the Debtor which comprise a portion of the Collateral, and the governmental entity shall pay the amount owing on the account free of any claim of setoff or recoupment, except as to any fees of the United States Trustee pursuant to 28 U.S. C. Sec. 1930.

8. The liens granted to DIP Factor herein are deemed validly granted, duly attached, and properly perfected, without the need of any additional actions being taken by or on behalf of DIP Factor, including but not limited to, the filing or recording of Uniform Commercial Code financing statements; provided, however, that in the event DIP Factor does make such a filing or recordation, the Debtor shall execute all documents required by DIP Factor to do so.

9. DIP Factor shall be the owner of Accounts purchased under the Agreement and the purchased Accounts and all proceeds there from shall be the sole property of DIP Factor, and will not, when purchased by DIP Factor, constitute property of the estate, and shall be free and clear of any claims.

10. Nothing in the Agreement, or in any of the documents executed in connection therewith or this Order, shall require DIP Factor to provide working capital to the Debtor, such being in the sole discretion of DIP Factor.

11. DIP Factor is hereby afforded the protection of Section 364(e) of the Bankruptcy Code with regard to the reversal or modification on appeal of this Order, or to the modification, vacating, or other amendment of this Order by this Court.

12. The Debtor shall comply with all provisions of the Agreement.

13. To the extent that any provision of the Agreement shall cause the Debtor to be in default thereunder solely as a result of it being subject to the Bankruptcy Code or it being insolvent, said provisions are waived by DIP Factor.

14. The Debtor shall not grant to any party any interest in the Collateral or priority in payment prior to or equal with the lien or priority in payment hereby being accorded to DIP Factor.

15. The entry of this Order and execution, delivery, and performance under the Agreement, or under any other documents executed in connection therewith, do not constitute a compromise, waiver, or other relinquishment of any right of DIP Factor, in equity or otherwise, including, but not limited to, any right of DIP Facotr to request and to obtain relief under the Bankruptcy Code.

16. The Debtor will not seek to surcharge the DIP Factor or its collateral with any expenses of the type described in Section 506(c) or 552(b) of the Bankruptcy Code unless it obtained DIP Factor's prior written consent to the incurrence of such expenses.

17. The Agreement is enforceable according to its terms and nothing contained therein is unlawful, unenforceable or violative of any usury or similar statute.

18. An event of default under this Order ("Default") shall include the following:

    a. the Debtor's failure to perform or comply with any of the terms, conditions, or covenants of this Order;

    b. The Debtor's failure to perform or comply with any of the terms, conditions, or covenants of the Agreement;

    c. The termination of this Order by its own terms, operation of law or court order;

    d. The dismissal of this Bankruptcy Case;

    e. The appointment of a trustee under the Bankruptcy Code;

    f. The conversion of the Bankruptcy Case to a case under another chapter of the Bankruptcy Code;

19. Upon the occurrence of a Default, DIP Factor shall provide the Debtor written notice of such Default to the Debtor and counsel for the Debtor. If the Default is a type that is not curable, or is curable by the Debtor and the Debtor fails to cure the Default within 24 hours from the time of service of such notice of the Default:

    a. the Debtor shall not seek authority to use any Cash Collateral;

    b. the Debtor shall hold and segregate all Cash Collateral in trust for DIP Factor and

    c. DIP Factor shall be entitled to an expedited hearing on a motion for immediate relief from the automatic stay under Section 362 (the "Stay Relief Motion").

20. Notwithstanding anything to the contrary contained herein, the proceeds of any advance from DIP Factor, shall not be used either: (a) in connection with the investigation, assertion, commencement, or continuation of any action or claim against DIP Factor (b) to object to or contest, or raise any defenses to the validity, perfection, priority, or enforceability of any rights or claims of the DIP Factor.

21. This Order is without prejudice to DIP Factor's rights to pursue any and all rights and remedies under the Bankruptcy Code, the Agreement, and any other applicable agreement or law, including without limitation to seek relief from the automatic stay and/or to seek adequate protection with respect to matters not covered by this Order, to seek an injunction, and/or to object to applications for allowance and/or payment of compensation of professionals employed by the Debtor or its estate.

22. DIP Factor shall properly notify all account debtors to make payment to DIP Factor only for post-petition invoices and to make payment to Amerisource for any prepetition invoices. This does not require DIP Factor to factor any prepetition accounts. The account debtors will be instructed to reference the invoice number being paid thereby. DIP Factor and Amerisource agree to provide accounts receivable reports as needed to effect this. All misdirected payments shall be immediately redirected to the appropriate party, in the form received insofar as is possible. Should Amerisource or DIP Factor receive a payment from an account debtor and be unable to discern to whom said payment belongs, the receiving factor and the other factor shall make inquiries as needed to resolve the issue and apply the payment accordingly, and if no invoice is referenced, such payment shall be applied to the oldest unpaid invoice.

## ADEQUATE PROTECTION

23. In consideration for the use of Cash Collateral and the Prepetition Lien Holders' liens, claims and interests in the Prepetition Collateral, the Prepetition Lien Holders shall receive the following adequate protection:

24. To the extent of any diminution in value of the Prepetition Collateral resulting from the Debtors' use of Cash Collateral after the Petition Date or the Debtors' use, sale or disposition of the other Prepetition Collateral, the Prepetition Lien Holders are granted valid, binding and

enforceable liens (the "Adequate Protection Liens") in all Collateral to secure an amount that is equal to the sum of the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral, shall be subject and subordinate to the super-priority claims and liens on the collateral which secures obligations owed to the DIP Factor under the DIP Factor Agreement.

Dated: May 15, 2013

ENTER:

J. Cox   *Jacqueline P. Cox*

UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

*[Attach copy of factoring Agreement and any other Agreement}*

- 11 -